UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY CHARLES WYDRA, | : | CIVIL NO: 1:20-CV-01765 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,[1] | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g). The plaintiff, Timothy Charles Wydra, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, we will vacate the

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 15-1* to *15-12*.[2]  In April 2018, Wydra protectively filed[3] applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since November 5, 2017. *Admin. Tr.* at 161–71.  After the Commissioner denied his claim at the initial level of administrative review, Wydra requested an administrative hearing. *Id.* at 140–41.  And on May 15, 2019, Wydra, represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Michele Stolls. *Id.* at 31–69.

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail.  Instead, we recite only those facts that bear on Wydra's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.  Here, Wydra's applications for benefits are dated May 4, 2018. *See Admin. Tr.* at 161, 163.  But there are references in the record to the filing date as April 24, 2018. *See id*. at 104, 105, 114, 115.  And April 24, 2018, is the date identified by the ALJ as the date that Wydra protectively filed his applications. *Id*. at 15.

The ALJ determined that Wydra had not been disabled from November 5, 2017 (the alleged onset date), through June 19, 2019 (the date of the decision). *Id.* at 27.  And so, she denied Wydra benefits. *Id*.  Wydra appealed the ALJ's decision to the Appeals Council, which denied his request for review on July 31, 2020. *Id.* at 1–6.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In September of 2020, Wydra, through counsel, began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and applied an erroneous standard of law. *Doc. 1* at ¶ 5.  He requests that the court reverse and set aside the Commissioner's decision or, in the alternative, remand the case to the Commissioner for further proceedings. *Id*. at 1–2 (Wherefore Clause).

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 13*.  The Commissioner then filed an answer and a certified transcript of the administrative proceedings. *Docs. 14, 15*.  The parties filed briefs, *see docs.* 18, 25, 30, and this matter is ripe for decision.

### III. Legal Standards.

#### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Wydra was disabled, but whether substantial evidence supports the Commissioner's finding that he was not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

To receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4] Unlike with disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits" under Title XVI of the Social Security Act. *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017). Supplemental Security Income "is a federal income supplement program funded by general tax revenues (not social security taxes)" "designed to help aged, blind or other disabled individuals who have little or no income." *Id*.

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment;

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)). "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)). Here, the ALJ determined that Wydra met the insured-status requirements through December 31, 2022. *Admin. Tr.* at 17.

(3) whether the claimant's impairment meets or equals a listed impairment;

(4) whether the claimant is able to do his or her past relevant work; and

(5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical

impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV.  The ALJ's Decision.

On June 19, 2019, the ALJ denied Wydra's claims for benefits. *Admin. Tr.* at 12–30. At step one of the sequential-evaluation process, the ALJ found that Wydra had not engaged in substantial gainful activity since November 5, 2017, his alleged onset date. *Id.* at 17.

At step two of the sequential-evaluation process, the ALJ found that Wydra had the following severe impairments: degenerative disc disease and degenerative

joint disease in the lumbar spine with radiculopathy; diabetes mellitus type II with peripheral neuropathy; right shoulder osteoarthritis with tears and tendinopathy; and localization related (focal) (partial) symptomatic epilepsy and epileptic syndrome with simple partial seizures. *Id*. at 18.

At step three of the sequential-evaluation process, the ALJ found that Wydra did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 20–21.

The ALJ then determined that Wydra has the RFC to perform sedentary work[5] with some limitations. *Id*. at 21. The ALJ limited Wydra "to occupations that require no more than occasional postural maneuvers such as balancing, stooping and climbing on ramps and stairs." *Id*. And she specified that Wydra "must avoid occupations that require climbing on ladders, ropes and scaffolds, kneeling, crouching or crawling." *Id*. She further concluded that Wydra "must avoid occupations that require pushing or pulling with the lower extremities to include the operation of pedals," as well as "occupations that require overhead

---

[5] *See* 20 C.F.R. § 416.967(a) ("Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.")

9

reaching, or pushing and pulling with the dominant right extremity to include the operation of hand levers or overhead work." *Id*. And the ALJ specified that Wydra must "avoid concentrated prolonged exposure to temperature extremes, vibrations, extreme dampness and humidity," as well as "exposure to hazards such as dangerous machinery and unprotected heights." *Id*. The ALJ further limited Wydra "to occupations requiring no more than simple, routine tasks, not performed in a fast-paced production environment, involving only simple, work related decisions and in general relatively few work place changes." *Id*. In making this RFC assessment, the ALJ reviewed Wydra's assertions and testimony; his treatment records; and his activities of daily living. *Id*. at 21–24. And she considered and found unpersuasive the one medical opinion in the record, which was by the state-agency medical consultant. *Id*. at 24–25.

At step four of the sequential-evaluation process, the ALJ found that Wydra is unable to do his past relevant work as an assistant manager and order filler. *Id*. at 25.

At step five of the sequential-evaluation process, considering Wydra's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as order clerk, information clerk, and system monitor—that exist in significant numbers in the national economy that Wydra could perform. *Id*. at 26–27.

In sum, the ALJ concluded that Wydra was not disabled from November 5, 2017, through the date of her decision on June 19, 2019. *Id*. at 27. Thus, she denied Wydra's claims for disability insurance benefits and supplemental security income. *Id*.

**V. Discussion.**

Wydra presents two claims. First, Wydra claims that the ALJ failed in her duty to develop the record fully and fairly regarding his shoulder injury. In connection with this claim, Wydra suggests that the ALJ failed to explain why she included limitation in the RFC regarding overhead reaching but not frontal reaching. Second, Wydra claims that the ALJ's decision is constitutionally defective given that the former Commissioner was removable only for cause and served a term longer than the term of the president in violation of the separation of powers. Because we conclude that remand is warranted based on Wydra's first claim, we do not reach his second claim.[6]

Because Wydra complains about the ALJ's decision regarding his shoulder impairment, we begin by setting forth how the ALJ addressed Wydra's shoulder impairment. As set forth above, the ALJ found that Wydra's "right shoulder osteoarthritis with tears and tendinopathy" was a severe impairment. *Admin. Tr.* at

---

[6] Wydra acknowledges that if we find remand is warranted based on his first argument, we should not address his second argument. *See doc. 30* at 1–2.

11

18. And when crafting Wydra's RFC, the ALJ addressed the shoulder injury as follows:

> In regards to the claimant's shoulder, he reported to the emergency room in July of 2018 after he fell hitting his right shoulder on a wooden floor. Upon examination, the claimant's upper extremities were normal, his pulses intact and equal and [he] had full and passive range of motion without pain. The claimant was not tender to palpitation in his midline back, however, there was some mild tenderness in the paraspinal muscles. X-rays of the claimant's right shoulder showed no fracture or dislocation. Thereafter, the claimant followed up with his primary care physician who ordered more x-rays and an MRI of his shoulder and sent him to orthopedics for a review in September 2018. The orthopedist's examination showed the claimant was tender to palpitation in the posterior and anterior shoulder with minimal tenderness in the AC joint and bicipital groove. The claimant experienced pain with all range of motion but was able to actively flex shoulder to 100 degrees and reach 120 degrees with passive flexion. The claimant's strength was 5/5 and while he had positive impingement signs he also had negative horn blower signs and negative drop arm testing. Imagining of the shoulder revealed mild AC joint arthritis as well as a posterior labral tear, paralabral cyst, a small tear of the supraspinatus tendon and tendinopathy of the long biceps tendon. The doctor reported that the claimant did not require surgery and he should begin with conservative treatment including EMG testing and a cortisone injection followed by physical therapy. While records show that the claimant did have an injection into his right shoulder and a referral was made to physical therapy and an EMG was ordered, it does not appear that the claimant went to therapy nor underwent the EMG testing on his shoulder. In sum, while this supports some limitations, which the undersigned has provided for by limiting the claimant's overhead reaching, pushing or pulling with the right extremity and operation of hand lever or overhead work, it does not support more limitation.

*Id*. at 23-24 (citations to the record omitted).  The ALJ also noted that Wydra testified that he tends to fall; that during one fall, he tore his rotator cuff; and now he cannot lift anything over five pounds. *Id*. at 22.

At the hearing, the ALJ asked the vocational expert several hypothetical questions. *Id*. at 62–65.  Wydra's counsel then asked the vocational expert if a "hypothetical person was limited to sedentary work but could only do occasional reaching in front of them with the right upper extremity, how would that affect their ability to work?" *Id*. at 66.  And the vocational expert responded that if a person "can only reach occasionally, especially with the right dominant extremity, I think that would eliminate work at that point[,]" explaining that with sedentary work, a person must use his or hands frequently. *Id*.at 66–67.

Wydra claims that the ALJ failed to develop the record fully and fairly as to his shoulder impairment.  Noting that the only medical opinion in the record is that of the state agency consultant, Dr. Butcofski, who rendered an opinion on July 5, 2018, Wydra points out that his shoulder impairment occurred as a result of a fall on July 21, 2018, which obviously was after Dr. Butcofski's opinion.  Thus, according to Wydra, the ALJ should have requested an updated medical opinion.  He continues that her failure to do so "is particularly problematic where the record contains objective evidence including trapezius trigger points, reduced range of motion, positive impingement signs, positive empty can testing, positive

13

O'Brien's, positive speed's test, posterior labral tear, paralabral cyst, tendinopathy, small tear of the supraspinatus tendon, and tendinopathy of the long biceps tendon." *Doc. 18* at 7 (citing *Admin. Tr.* at 497). And "[w]ithout an updated medical opinion, the ALJ necessarily relied on her lay understanding of these objective findings." *Id.* Wydra suggests that the ALJ should have ordered a consultative examination. He also questions how the ALJ could have concluded that his shoulder impairment limits him to only occasional reaching overhead but does not limit him as to reaching in front of him.

At the outset, we acknowledge that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n.1). In assessing a claimant's RFC, the ALJ must consider all the evidence of record. *Burnett*, 220 F.3d at 121. "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066). The court's "review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Wilder v. Kijakazi*,

14

1:20-CV-492, 2021 WL 4145056, at *6 (M.D. Pa. Sept. 9, 2021); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) ("We examine the ALJ's conclusions as to [the claimant's] residual functional capacity with the deference required of the substantial evidence standard of review.").

"Surveying the medical evidence to craft an RFC is part of the ALJ's duties." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). And "[i]n evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw medical data when evaluating a claimant's functional capacity." *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017). And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'" *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

Further, "[o]ne of the bedrock tenets of Social Security disability law is the concept that 'ALJs have a duty to develop a full and fair record in social security

15

cases.'" *Gable v. Kijakazi*, No. 1:21-CV-00194, 2022 WL 3084305, at *1 (M.D. Pa. Aug. 3, 2022) (quoting *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995)). "As part of this duty, 'an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits.'" *Id*. (quoting *Ventura*, 55 F.3d at 902). "The decision to order a consultative examination is within the sound discretion of the ALJ unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Miller v. Berryhill*, No. 3:17CV1452, 2019 WL 3776662, at *6 (M.D. Pa. Aug. 12, 2019) (citing *Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002)). Although the "determination of whether a consultative examination is needed in a particular case is a discretionary judgment by an ALJ," it "is a judgment that should be firmly rooted in an assessment of the evidence as a whole." *Gable*, 2022 WL 3084305 at * 9.

Moreover, in setting the RFC, the ALJ must clearly articulate his or her reasoning. In other words, the ALJ must "set forth the reasons for [her] decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05). Although an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," the ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The

ALJ's decision must set out "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704.  If an ALJ "has not sufficiently explained" how he or she considered all the evidence "'to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019) (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979))

Here, absent explanation from the ALJ, it is not clear how on the present record she determined that Wydra's shoulder impairment limited him from overhead reaching, from pushing and pulling with his right extremity, from operating a hand lever, and from overhead work, but did not limit him from reaching in front of him.  There is no medical opinion in the record making such a distinction.  And although the ALJ asserts that the record supports the limitations that she set forth, but "it does not support more limitation[,]" *Admin. Tr.* at 24, such a bare assertion does not explain the distinction made (or—perhaps—missed would be more apt) by the ALJ regarding overhead reaching and reaching in front.  Rather, such an assertion is merely the *ipse dixit* of the ALJ.  Further, while we appreciate the Commissioner's argument that in setting the RFC, the ALJ considered Wydra's conservative treatment, sporadic complaints, and activities of daily living, none of that explains why the ALJ made the distinction between

17

overhead reaching and frontal reaching.  The ALJ undoubtedly has broad discretion to determine whether the record needs to be further developed, but she does not reasonably exercise that discretion by failing to develop the record and then making a distinction between overhead and frontal reaching that is not supported by any medical opinion without explaining the basis for such distinction.  In sum, based on the present record, we cannot conclude that the ALJ's decision is supported by substantial evidence.

We further note that the ALJ's failure to explain how on the present record she was able to determine that Wydra could not engage in any overhead reaching but he could engage in frontal reaching was not harmless error given that the vocational expert testified that if a person can only reach occasionally in front, he or she could not work. *Id*.at 66–67.

### C. Remand is the appropriate remedy.

Because the ALJ's decision is not support by substantial evidence on the present record, the question then is whether the court should remand the case to the Commissioner for further proceedings or award benefits to Wydra, as he requests in his complaint. *See doc. 1* at (Wherefore Clause) (requesting that the court reverse and set aside the Commissioner's decision or, in the alternative, remand the case to the Commissioner for further proceedings).  We conclude that remand is the appropriate remedy.

Under sentence four of 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Thus, although a remand is often the appropriate remedy, the court may also enter an order awarding the claimant benefits. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008) (remanding the case to the district court with directions to enter an order awarding the payment of benefits); *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (same); *Podedworny v. Harris*, 745 F.2d 210, 223 (3d Cir. 1984) (same). But an "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22. Whether there has been excessive delay and/or prior remands also bears on whether to award benefits or to remand for further proceedings. *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391 (M.D. Pa. 2019). "Thus, in practice any decision to award benefits in lieu of ordering a remand for further agency consideration entails the weighing of two factors: First, whether there has been an excessive delay in the litigation of the claim which is not attributable to the claimant; and second, whether the administrative record of the case has been fully

developed and substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*.

Here, there has not been excessive delay in the litigation of Wydra's claims, and we cannot say that substantial evidence on the record as a whole shows that Wydra is disabled and entitled to benefits. Thus, we will remand the case to the Commissioner for further proceedings.

## VI. Conclusion.

For the foregoing reasons, we will vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge